ELDER *v.* HOLLOWAY ET AL.

No. 92–8579.   Argued January 10, 1994—Decided February 23, 1994

GINSBURG, J., delivered the opinion for a unanimous Court.

*Michael E. Tankersley* argued the cause for petitioner. With him on the briefs were *Brian Wolfman, Alan B. Morrison,* and *John C. Lynn,* appointed by this Court, 510 U. S. 806.

*James J. Davis* argued the cause and filed a brief for respondents.*

JUSTICE GINSBURG delivered the opinion of the Court.

This case presents the question whether an appellate court, reviewing a judgment according public officials quali-

---

*Andrew J. Pincus* and *Steven R. Shapiro* filed a brief for the American Civil Liberties Union as *amicus curiae* urging reversal.

A brief of *amici curiae* urging affirmance was filed for the State of Hawaii et al. by *Robert A. Marks,* Attorney General of Hawaii, and *Steven S. Michaels,* Deputy Attorney General, and by the Attorneys General for their respective jurisdictions as follows: *Charles M. Oberly III* of Delaware, *Larry EchoHawk* of Idaho, *Roland W. Burris* of Illinois, *Robert T. Stephan* of Kansas, *Scott Harshbarger* of Massachusetts, *Joseph P. Mazurek* of Montana, *Ernest D. Preate, Jr.,* of Pennsylvania, *Jefferey B. Pine* of Rhode Island, *Jeffrey L. Amestoy* of Vermont, *Joseph B. Meyer* of Wyoming, and *Malaetasi Togafau* of American Samoa.

fied immunity from a damages suit charging violation of a federal right, must disregard relevant legal authority not presented to, or considered by, the court of first instance. We hold that appellate review of qualified immunity dispositions is to be conducted in light of all relevant precedents, not simply those cited to, or discovered by, the district court.

## I

In April 1987, police officers in Idaho learned that Charles Elder was wanted by Florida authorities. They set out to arrest Elder, but did not obtain an Idaho arrest warrant. The officers planned to apprehend Elder at his workplace, in a public area where a warrant is not required. See *United States* v. *Watson*, 423 U. S. 411, 418, n. 6 (1976). Finding that Elder had already left his jobsite, the officers surrounded the house in which he resided and ordered him to come out. Elder suffered epileptic seizures during the episode, and an officer instructed him to crawl out of the house to avoid injury from falling. Elder, instead, walked through the doorway, immediately suffered another seizure, and fell on the concrete walk in front of the house. He sustained serious brain trauma and remains partially paralyzed.

## II

Alleging that the warrantless arrest violated his Fourth Amendment right to be secure against unreasonable seizure, Elder sued the arresting officers for damages under 42 U. S. C. § 1983. The doctrine of qualified immunity shields public officials like respondents from damages actions unless their conduct was unreasonable in light of clearly established law. The District Court analyzed Elder's case in three steps. Had the arrest occurred inside the house, that court recognized, clear law would come into play: absent exigent circumstances, an arrest warrant would have been required. See 751 F. Supp. 858, 860 (Idaho 1990) (citing *Payton* v. *New York*, 445 U. S. 573 (1980)). *If* the same clear law governed

Elder's arrest as it in fact transpired, the District Court said, then the matter of exigent circumstances would present a triable issue. 751 F. Supp., at 865.[1] But, the District Court concluded, it was not clear that the warrant requirement applied when officers surrounded a house and requested an individual inside to come out and surrender. For that scenario, the one presented here, the District Court "found no controlling Idaho or Ninth Circuit case law." *Id.*, at 866. The District Court accordingly granted summary judgment for the officers on qualified immunity grounds. See, *e. g.*, *Harlow* v. *Fitzgerald*, 457 U. S. 800, 818 (1982) (officials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known").

On appeal, the Ninth Circuit noticed precedent in point missed in the District Court: *United States* v. *Al-Azzawy*, 784 F. 2d 890 (CA9 1985), cert. denied, 476 U. S. 1144 (1986). *Al-Azzawy*, the Court of Appeals observed, involved a suspect seized outside his surrounded home. The *Al-Azzawy* decision, published over a year before Elder's arrest, "might have alerted a reasonable officer to the constitutional implications of putting a suspect under arrest after he had come outside his house pursuant to an order to exit." 975 F. 2d 1388, 1391–1392 (1991).[2] Indeed, *Al-Azzawy* explicitly "reaffirmed the rule that 'it is the location of the arrested person, and not the arresting agents, that determines whether an arrest occurs within a home.' [*Al-Azzawy*, 784

---

[1] According to depositions before the District Court, Elder had access to guns in the house, a consideration that might support an exigent circumstances plea. On the other hand, the police started to plan for the arrest five days before it occurred, a factor that might tug against a finding of exigency.

[2] Elder's brief in the Court of Appeals did cite *Al-Azzawy*, albeit without elaboration. Brief for Appellant in No. 91–35146 (CA9), p. 9. There was cause for Elder's caution: The ultimate holding of *Al-Azzawy* was that exigent circumstances justified the warrantless arrest. Cf. n. 1, *supra*.

F. 2d, at 893] (quoting *United States* v. *Johnson*, 626 F. 2d 753, 757 (9th Cir. 1980), *aff'd on other grounds*, 457 U. S. 537 . . . (1982))." 975 F. 2d, at 1391.

Elder could not benefit from the rule reaffirmed in *Al-Azzawy*, the Court of Appeals believed, because that precedent had been unearthed too late. For the conclusion that cases unmentioned in the District Court could not control on appeal, the Court of Appeals relied on *Davis* v. *Scherer*, 468 U. S. 183 (1984), in particular, on this statement from *Davis:* "A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by *showing* that those rights were clearly established at the time of the conduct at issue." *Id.*, at 197 (emphasis added).

Although typing the qualified immunity inquiry "a 'pure questio[n] of law,'" 975 F. 2d, at 1392 (quoting *Romero* v. *Kitsap County*, 931 F. 2d 624, 627–628 (CA9 1991)), the Court of Appeals read *Davis* to require plaintiffs to put into the district court record, as "legal facts," the cases showing that the right asserted was "clearly established." 975 F. 2d, at 1394. Just as appellants forfeit facts not presented to the court of first instance, the Ninth Circuit reasoned, so, in the peculiar context of civil rights qualified immunity litigation, a plaintiff may not benefit on appeal from precedent neither he nor the district court itself mentioned in the first instance: "[T]he plaintiff's burden in responding to a request for judgment based on qualified immunity is to identify the universe of statutory or decisional law from which the [district] court can determine whether the right allegedly violated was clearly established." *Id.*, at 1392. We granted certiorari, 509 U. S. 921 (1993).

### III

The central purpose of affording public officials qualified immunity from suit is to protect them "from undue interference with their duties and from potentially disabling threats of liability." *Harlow* v. *Fitzgerald*, 457 U. S., at 806. The

rule announced by the Ninth Circuit does not aid this objective because its operation is unpredictable in advance of the district court's adjudication. Nor does the rule further the interests on the other side of the balance: deterring public officials' unlawful actions and compensating victims of such conduct. Instead, it simply releases defendants because of shortages in counsel's or the court's legal research or briefing.[3]

In thinking its rule compelled by this Court's instruction, the Ninth Circuit misconstrued *Davis* v. *Scherer.* The Court held in *Davis* that an official's clear violation of a state administrative regulation does not allow a § 1983 plaintiff to overcome the official's qualified immunity. Only in this context is the Court's statement comprehensible: "A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that *those* rights were clearly established . . . ." *Davis* v. *Scherer,* 468 U. S., at 197 (emphasis added). *Davis,* in short, concerned not the authorities a court may consider in determining qualified immunity, but this entirely discrete question: Is qualified immunity defeated where a defendant violates *any* clearly established duty, including one under state law, or must the clearly established right be the federal right on which the claim for relief is based? The Court held the latter. *Id.,* at 193–196, and n. 14; see 984 F. 2d 991, 995 (CA9 1993) (Kozinski, J., dissenting from denial of reh'g en banc).

---

[3] The Ninth Circuit's rule could have a number of untoward effects. It could occasion appellate affirmation of incorrect legal results, see 984 F. 2d 991, 998–999 (CA9 1993) (Kozinski, J., dissenting from denial of reh'g en banc), and it could place defense counsel in a trying situation. See ABA Model Rule of Professional Conduct 3.3(a) (1989 ed.) ("A lawyer shall not knowingly: . . . (3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel.").

Whether an asserted federal right was clearly established at a particular time, so that a public official who allegedly violated the right has no qualified immunity from suit, presents a question of law, not one of "legal facts." See *Mitchell* v. *Forsyth*, 472 U. S. 511, 528 (1985); *Harlow* v. *Fitzgerald*, 457 U. S., at 818. That question of law, like the generality of such questions, must be resolved *de novo* on appeal. See, *e. g.*, *Pierce* v. *Underwood*, 487 U. S. 552, 558 (1988). A court engaging in review of a qualified immunity judgment should therefore use its "full knowledge of its own [and other relevant] precedents." See *Davis*, 468 U. S., at 192, n. 9.

We leave it to the Court of Appeals to consider, in light of all relevant authority, including *Al-Azzawy*, whether the respondent officers are entitled to prevail on their qualified immunity defense. We express no opinion on that ultimate issue, nor do we consider whether the officers' alternate plea of exigent circumstances is tenable.

\* \* \*

For the reasons stated, the judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*