USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 95-2297 MICHAEL D. VEILLEUX, Plaintiff, Appellant, v. JEFFREY PERSCHAU, DETECTIVE FOR THE MANCHESTER POLICE DEPARTMENT, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Paul J. Barbadoro, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Aldrich and Coffin, Senior Circuit Judges, _____________________ Selya, Cyr, Boudin and Lynch, Circuit Judges. ______________ ____________________ ____________________ OPINION EN BANC ____________________ Paul J. Garrity for appellant. _______________ Dyana J. Crahan with whom Donald E. Gardner and Devine, Millimet _______________ __________________ _________________ & Branch were on brief for appellee. ________ ____________________ November 20, 1996 ____________________ Per Curiam. In the district court, Michael Veilleux ___________ brought a civil rights action under 42 U.S.C. 1983 against Jeffrey Perschau, a detective in the Manchester, New Hampshire Police Department. The district court granted summary judgment in favor of Perschau on grounds of qualified immunity. Veilleux appealed, and on August 30, 1996, a divided panel of this court reversed the district court's decision, which we now withdraw. We ordered a rehearing en __ banc pursuant to our discretionary authority under Fed. R. ____ App. P. 35(a). We now affirm the district court without reaching issues that may pose difficult problems in future cases. Taking the facts most favorable to Veilleux, as is appropriate on summary judgment, St. Hilaire v. City of ____________ ________ Laconia, 71 F.3d 20, 24 (1st Cir. 1995), cert. denied, 116 S. _______ ____________ Ct. 2548 (1996), the following is what occurred. On the evening of January 19, 1993, a patrolling police officer in Manchester heard the sound of a gunshot coming from Veilleux' direction. The officer pursued Veilleux and thought that he saw Veilleux fumbling as if to take something out of his pocket. But when Veilleux was caught, there was no gun on Veilleux' person nor was one found nearby. Veilleux apparently had been drinking and scuffled with the officer. He was then arrested for assaulting a police officer and resisting arrest. The next morning, while -2- -2- Veilleux was at the Manchester state court awaiting arraignment, he was overheard by another police officer making statements that indicated that Veilleux had had a gun, specifically, a .32 automatic with hollow-point ammunition. This information was relayed to Detective Perschau who drove to the courthouse and had Veilleux brought to a private office for interview. Veilleux did not have an attorney present and requested counsel. Perschau told Veilleux that he "wasn't interested in arresting him, [but only] in getting the gun off the street" so that no child could find it and cause itself harm. Perschau also told Veilleux that Veilleux was familiar with the system and should understand that any help he gave the police in recovering the gun could not be used against him, because Perschau had not read him his Miranda rights. United _______ ______ States v. Veilleux, 846 F. Supp. 149, 152 (D.N.H. 1994) ______ ________ (McAuliffe, J.).  Veilleux then admitted that he had had the pistol and had thrown it on or beneath a porch during the chase, but could not recall the precise location. Police in turn conducted a very extensive search and later that day found the weapon underneath a porch near the site of the arrest. The state did not prosecute Veilleux for possessing a weapon, but the federal government subsequently indicted Veilleux as a felon-in-possession under 18 U.S.C. 922(g)(1). There is -3- -3- no evidence that Perschau played any part in the acquisition of incriminating information by federal authorities. In the federal district court, Veilleux moved before trial to suppress the handgun and the statements he made to police. Without deciding that a Miranda warning was _______ required, the district court suppressed the handgun and the statements because "[u]nder the totality of these circumstances, defendant's statements were involuntary--his will not to incriminate himself, exercised repeatedly during the interrogation, was overborne by the promises made and distorted legal advice given." Veilleux, 846 F. Supp. at ________ 155.1 Following the suppression order, the federal prosecutor abandoned the case against Veilleux. Veilleux then brought the present section 1983 action against Perschau in the same federal district court but before a different district judge (Judge Barbadoro). Veilleux claimed that Perschau had violated Veilleux' constitutional rights against self-incrimination and to substantive due process. Without deciding definitively whether there had been a violation--but expressing evident doubts--the district court granted summary judgment in favor  ____________________ 1The reason for the court's hesitation to rely on Miranda apparently stemmed from a recognition that the _______ Supreme Court has carved out an exception to the requirement of Miranda warnings in situations where the questions are _______ "necessary to secure [the police officers'] own safety or the safety of the public." New York v. Quarles, 467 U.S. 649, ________ _______ 658-59 (1984). -4- -4- of Perschau on grounds of qualified immunity. We agree with the district judge's conclusion. Qualified immunity protects public officials from section 1983 civil liability so long as they "acted reasonably under settled law in the circumstances." Hunter ______ v. Bryant, 502 U.S. 224, 228 (1991) (per curiam). See ______ ___ generally Anderson v. Creighton, 483 U.S. 635, 638-39 (1987). _________ ________ _________ The test is one of objective reasonableness, id. at 641, and _________ ___ is applied where possible by the district judge in advance of trial, since the immunity is not only immunity against civil liability but immunity from the trial itself. Elder v. _____ Holloway, 510 U.S. 510, 514-15 (1994); Hunter, 502 U.S. at ________ ______ 228. In appraising Perschau's conduct, our focus of attention is on the self-incrimination claim and the underlying issue of whether the confession was "involuntary." There is considerable doubt whether, even apart from Quarles, a _______ Miranda violation standing alone would give rise to a _______ constitutional claim under section 1983. See, e.g., Warren _________ ______ v. City of Lincoln, 864 F.2d 1436, 1442 (8th Cir.), cert. ________________ _____ denied, 490 U.S. 1091 (1989); accord Giuffre v. Bissell, 31 ______ ______ _______ _______ F.3d 1241, 1256 (3d Cir. 1994). The "involuntariness" standard, at least where there is no physical abuse, generally depends on whether under the totality of the circumstances the defendant's will was -5- -5- overborne. See United States v. Jackson, 918 F.2d 236, 242 ___ ______________ _______ (1st Cir. 1990). In this case, some might think that Perschau had applied relatively little pressure, that his goal was admirable, and that the legal advice that he gave to Veilleux was sound and amply confirmed by the district court's grant of the later motion to suppress. The absence of a lawyer does not itself automatically render a statement involuntary. See Quarles, 467 U.S. at 652, 658-59. ___ _______ On the other hand, courts have in various circumstances found to be "involuntary" certain statements made by defendants in police custody in response to fairly modest police pressure or following advice or promises that the court believed to be unfair or misleading.2 Here, it is likely that the district court in granting the motion to suppress was affected by the federal prosecutor's action which undercut Perschau's earlier representation. Further, district courts have enjoyed considerable latitude in making their own fact-specific judgment whether, under unique circumstances, a statement is "involuntary."  ____________________ 2See, e.g., United States v. Walton, 10 F.3d 1024, 1028- _________ _____________ ______ 32 (3d Cir. 1993) (police told defendant he could speak "off the cuff"); Griffin v. Strong, 983 F.2d 1540, 1543-44 (10th _______ ______ Cir. 1993) (police impliedly promised "lesser punishment and physical protection"); United States v. Pinto, 671 F. Supp. _____________ _____ 41, 57-60 (D. Me. 1987) (Cyr, C.J.) (police officer represented that he could keep defendant out of jail if he confessed). -6- -6- It is enough to resolve this case that the circumstances are unique and the voluntariness issue is very close. Although the right against self-incrimination is itself clearly established, Perschau is "nevertheless . . . entitled to qualified immunity [so long as his] decision was reasonable, even if mistaken." Hunter, 502 U.S. at 229; ______ accord Hegarty v. Somerset County, 53 F.3d 1367, 1372-73, ______ _______ _______________ 1379 (1st Cir. 1995). Indeed, the Supreme Court has said that the qualified immunity defense was designed to "provid[e] ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley ______ v. Briggs, 475 U.S. 335, 341 (1986). ______ Under an objective reasonableness standard, Perschau could reasonably believe that he was not violating Veilleux' rights but offering him an attractive bargain for a legitimate purpose, namely, to protect the public against the chance that the gun would be found by a child (or perhaps by a criminal). It makes no difference that a court might later conclude that the officer was mistaken; one of the cardinal purposes of immunity is to offer the police "a fairly wide zone of protection in close cases." Roy v. Inhabitants of ___ ______________ the City of Lewiston, 42 F.3d 691, 695 (1st Cir. 1994). This ____________________ is enough to dispose of the present case. Affirmed. ________ -7- -7-