Douglas A. BOUNDS,

v.

Stanley TAYLOR; Robert Snyder; Joseph Dudlek; Alan Machtinger; Margaret Hullinger and James Lupinetti Stanley Taylor, James Lupinetti, Alan Machtinger, Robert Snyder and Joseph Dudlek, Appellants (* Caption Amended as per Court's March 25, 2003 Order).

No. 02–2644.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Sept. 2, 2003.

Decided Sept. 18, 2003.

Before SLOVITER, NYGAARD and ROTH, Circuit Judges.

*OPINION OF THE COURT*

SLOVITER, Circuit Judge.

Appellants Stanley Taylor, Robert Snyder, Alan Machtinger, Joseph Dudlek, James Lupinetti (collectively the "Appellants"), officers and administrative staff members of the Delaware Department of Correction ("DOC"), were found liable by a jury in the total amount of $51,000 to Douglas Bounds on his First Amendment retaliation claim under 42 U.S.C. § 1983. Bounds claimed that the retaliation followed his response to an official inquiry that some of the other prison guards had used excessive force in quelling a prison disturbance. The jury found for Bounds. The District Court rejected the Appellants' motion for judgment as a matter of law or for a new trial, and they appeal.

## I.

## FACTS AND PROCEDURAL HISTORY

Because the facts are known to the parties, we review them only briefly. Bounds was a correctional officer at the Delaware Correctional Center ("DCC") for nine years (1989–1998). He concedes that over the course of his employment with DOC, he had an attendance problem and received less-than-favorable reviews. Bounds also suffered from alcoholism and work-related depression.

On August 21, 1997, Bounds participated in a riot suppression, during which he witnessed fellow correctional officers Joseph Dudlek and Larry Fetzer allegedly use excessive force against inmates. On the initial inquiry, he omitted details about any use of excessive force because he was afraid of the potential backlash and did not want to be labeled as a "snitch" by his fellow officers. An Internal Affairs ("IA") officer, Tom Bailor, interviewed various inmates and found that they corroborated the story by Dominique Brown, another officer, of assaults against inmates in the course of the riot suppression. When Bailor questioned Bounds again, Bounds revealed more details and told Bailor that he believed that Dudlek and Fetzer used excessive force against the inmates. He claims that almost immediately thereafter, Dudlek began harassing him by a series of indisputably pointed remarks that conveyed the impression that Dudlek knew that Bounds was the "snitch." Bounds testified that Dudlek confronted him in the DOC's parking lot and demanded to know what was said to the IA department, that he was shunned, and that the other officers who used to be his friends did not wish to communicate with him any longer because he was labeled a "snitch." App. at 175. When he referred to this harassment during a hearing in February 1998 investigating allegations that Bounds had been seen visiting a liquor store in his DOC uniform, Bounds broke down and cried. While Bounds was ultimately cleared of the allegations, the so-called "crying incident" led to the DOC's decision to perform a psychological evaluation (with Dr. Peggy Hullinger, the DOC-appointed forensic psychologist) notwithstanding that he was already seeing a psychiatrist for work-related depression and taking psychotropic medication.

DOC Human Resources Director Alan Machtinger received the results of the psychological evaluation on April 20, 1998. It concluded that Bounds was unfit for duty in his current position as a correctional officer until he completed an intensive outpatient alcohol treatment program. The

next day, Machtinger informed DCC Warden Robert Snyder about Bounds' temporary unfitness for duty, and on April 28, 1998 Snyder, on the recommendation of both Machtinger and Dr. Hullinger, temporarily reassigned Bounds for light-duty work in the control room with no inmate contact until he completed the recommended alcohol treatment therapy. Bounds refused, stating that the new shift was inconvenient, would change his days off, and would disrupt his car pool to and from the prison. Snyder again ordered Bounds to report to his light-duty work shift, and again Bounds refused on the same grounds.

As a condition to Bounds' return to his position as a correctional officer, he was required to enter an intensive out-patient treatment program. Dr. Hullinger recommended the PACE program in Dover, Delaware, which Bounds entered but dropped shortly thereafter because it was far from his residence and cost $20 per session. Instead, on June 19, 1998, Bounds enrolled in the substance abuse program at Mental Health Access ("MHA") in his hometown of Seaford, Delaware. He later completed the out-patient treatment program satisfactorily and was discharged on October 11, 1998.

Shortly after Bounds enrolled in the substance abuse program at MHA, Machtinger informed him that the DOC was considering permanent termination because he had missed treatment sessions at PACE and because he twice refused to report for his light-work shifts in the control room. Machtinger complained that Bounds still tested positive for alcohol prior to attending sessions at PACE, and repeatedly missed Alcoholics Anonymous meetings. Although Bounds' employment with the DOC was never officially terminated, he did not regain his correctional officer position, and on October 16, 1998, he applied for a State of Delaware disability pension effective on February 1, 1999.

Some time later, Bounds filed this 42 U.S.C. § 1983 claim in the District of Delaware against Appellants, alleging First Amendment retaliation for reporting what he believed was the use of excessive force by fellow correctional officers against inmates.[1] The District Court held a five-day jury trial which resulted in a verdict in favor of Bounds in the total amount of $51,000.00 divided among Appellants. Appellants then moved for judgment as a matter of law or for a new trial. The District Court entered a final order denying Appellants' motion. This appeal followed.[2]

Appellants raise four issues: 1) Bounds did not satisfy his evidentiary burden for First Amendment retaliation; 2) Appellants were entitled to qualified immunity status as state correctional officers; 3) the District Court abused its discretion when it decided to seat juror Catherine Bell over Appellants' peremptory challenge; and 4) the District Court abused its discretion when it excluded from the jury any mention of the outcome of the trial of *United States v. Larry Fetzer*, Cr. A. No. 99–41 (D.Del.).

## II.

## DISCUSSION

A. *Standard of Review*

We have plenary review of the District Court's ruling on the motion for judgment

---

1. Fellow Officer Dominique Brown filed a similar claim, and their two claims were consolidated. Brown is not a party to this appeal.

2. There is subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3). This court exercises appellate jurisdiction under 28 U.S.C. § 1291.

as a matter of law. We should affirm the District Court's denial of the motion for judgment as a matter of law "unless the record is critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief." *Rotondo v. Keene Corp.*, 956 F.2d 436, 438 (3d Cir.1992) (quotations omitted). We must view the record in the light most favorable to the non-moving party. *Link v. Mercedes–Benz of N. Am., Inc.*, 788 F.2d 918, 921 (3d Cir.1986). We also have plenary review of the question of law whether the asserted federal right was clearly established, which arises on the qualified immunity issue. *See Elder v. Holloway*, 510 U.S. 510, 515–16, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994).

We review for abuse of discretion whether the District Court properly scrutinized the *Batson* challenge of juror Catherine Bell, as that is the basis for Appellants' motion for a new trial. *See American Bearing Co. v. Litton Indus.*, 729 F.2d 943, 948 (3d Cir.1984). We also review under an abuse of discretion standard Appellants' motion for a new trial on the issue of the District Court's treatment of evidence related to the outcome of *United States v. Fetzer*. *See American Bearing Co.*, 729 F.2d at 948.

### B. *First Amendment Retaliation*

#### 1. *Waiver*

Bounds contends that Appellants waived their right to argue that there was insufficient evidence to support the jury's finding against them because they failed to specifically raise the issue of the First Amendment retaliation claim in their post-trial brief, a prerequisite for judgment as a matter of law under Federal Rule of Civil Procedure 50. We have examined the record. The Table of Contents of Appellants' post-trial brief contains no explicit reference to a motion for judgment as a matter

of law on the First Amendment retaliation issue. *See* App. at 41–2. Although we are not fully persuaded by Appellants' claim that the eight points they raised together sufficiently covered the First Amendment retaliation issue, we will consider the merits of their claim.

The Supreme Court recognized a cause of action in First Amendment retaliation in the landmark cases of *Pickering v. Board of Education*, 391 U.S. 563, 568–70, 574–75, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 283–84, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), and we expanded the doctrine in *Ambrose v. Township of Robinson*, 303 F.3d 488, 493 (3d Cir.2002) (citing *Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 675, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996)). We held in *Ambrose* that in such a case, the courts must apply the *Pickering* balancing test as described in that case:

> First, a plaintiff must show that his conduct was constitutionally protected. Second, he must show that his protected activity was a substantial or motivating factor in the alleged retaliatory action. Finally, the defendant may defeat the plaintiff's case by showing that it would have taken the same action even in the absence of the protected conduct.

*Ambrose*, 303 F.3d at 493 (quotation and internal citations omitted). Appellants concede that Bounds satisfied his burden to show that his report to the IA was constitutionally protected.

Appellants argue that Bounds never met his initial burden of showing that his report to the IA department was a substantial or motivating factor in the DOC's decision to remove him from his correctional officer position. They argue that no reasonable jury could have found that Bounds'

reassignment constituted retaliatory action by engaging in an appellant-by-appellant factual analysis.

Appellants rely primarily on *Ambrose* in which Ambrose, a police officer, alleged that his suspension was in retaliation for his affidavit in support of a fellow officer's lawsuit against the township. 303 F.3d at 490. The township's proffered motivation for the suspension was that Ambrose was suspected of making unauthorized photocopies prior to his affidavit. *Id.* at 491–92. Despite the jury's finding for Ambrose, we reversed the District Court's order denying the township's motion for judgment as a matter of law because it was clear from the record that Ambrose's affidavit could not possibly have been a substantial or motivation factor in the township's decision to suspend him when none of the township commissioners knew about his affidavit before they voted to suspend him. *Id.* at 493. We stated that the "question is not whether there is literally no evidence ... but whether there is evidence upon which the jury could properly find a verdict for that party." *Id.* at 493 (quotation omitted).

Bounds responds that *Feldman v. Philadelphia Housing Authority*, 43 F.3d 823 (3d Cir.1994), is far more analogous to this case. In *Feldman*, a former employee of the Housing Authority alleged that his discharge, which followed his internal complaint, violated the First Amendment and the Pennsylvania whistleblower statute. 43 F.3d at 826–27. We held there that the record was "replete with evidence from which the jury could property conclude" that the retaliation was, at the very least, a substantial or motivating factor of the employer's actions and therefore upheld the First Amendment claim. *Id.* at 831.

Unlike previous First Amendment retaliation cases where the alleged retaliation was confined to a solitary incident, this case presents a series of different instances which, Bounds submits, in the context of one another constituted retaliation. Bounds faces the same difficulties as a discrimination claimant who must show a substantial or motivating factor when many of the decisions made by the employer were made "behind the scenes." In such a situation, evidence of a temporal proximity is often helpful. As this court stated,

> A play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario.... [T]he factfinder in this type of case should not "necessarily examine each alleged incident of harassment in a vacuum. What may appear to be a legitimate justification for a single incident of alleged harassment may look pretextual when viewed in the context of several other related incidents."

*Andrews v. City of Philadelphia*, 895 F.2d 1469 (3d Cir.1990) (quoting *Vance v. S. Bell Tel. & Tel. Co.*, 863 F.2d 1503, 1510 (11th Cir.1989)).

■ There is adequate evidence from which the jury could reasonably have found each of the Appellants was aware of Bounds' report of excessive force. A reasonable jury could have interpreted Dudlek's encounter with Bounds in the DOC parking lot as indicative of his knowledge of the report to the IA department. Bounds testified that Dudlek referred to him as a "snitch" for reporting the riot suppression incident. A reasonable jury could also have concluded that Dudlek's participation in the liquor store incident was all part of a grand scheme to retaliate against Bounds' exercise of free speech.

Lupinetti, Bailor's supervisor in the IA department, knew of the multiple complaints by correctional officers concerning

the use of excessive force during the 1997 riot suppression. Although Lupinetti never directly interacted with Bounds, and never actively participated in retaliatory conduct, the testimony of Bailor with regard to Lupinetti's reaction to Bailor's investigatory report was sufficient to put Lupinetti in the circle of Appellants. Lupinetti told Bailor that he had reported the statement of Correctional Officer Brown about excessive force to Warden Snyder and DOC Commissioner Taylor. When Bailor reported to Lupinetti that he had difficulty scheduling the testimony of the other officers, Lupinetti said Snyder didn't like Bailor "messing around in his house." App. at 706–07. When Bailor submitted his 44–page report, Lupinetti told him "they [Paul, Denberg and Commissioner Taylor] are pissed at [Bailor] for this report" and required Bailor to change it. App. at 714–15. Bailor protested that it reeks of a coverup, but Lupinetti made clear that Bailor's job was at risk. Lupinetti told him the DOC did not want any bad press. App. at 718. Bailor found it "puzzling" that Lupinetti accompanied him to the Attorney General's office to discuss his findings when Bailor had previously gone alone, told him he couldn't give his report to the Attorney General, and limited him in what he could say. App. at 722–23. A reasonable jury could have concluded that Lupinetti shared the desire to downplay the force used in the riot suppression and was one of those responsible for actively creating an environment that was hostile to Bounds.

Machtinger, the Human Resources Director, had frequent and direct contact with Bounds. Bounds' crying incident, which Bounds attributed to Dudlek's harassment, was reported to Machtinger. But rather than investigate Dudlek's alleged harassment, Machtinger ordered a psychological examination of Bounds. A reasonable jury could have concluded that Machtinger's insistence on removing Bounds from his position and eagerly encouraging him to enroll in a specific outpatient alcohol treatment center after Bounds' report to the IA department was retaliatory. Bounds' alcoholism and depression were well documented throughout his career with the DOC, and Machtinger's refusal to reinstate Bounds after successful completion of a legitimate treatment program could have suggested to a reasonable jury his retaliatory motive.

Taylor, the Commissioner of Correction, was fully aware of the day-to-day details of Bailor's investigation of the riot suppression, sought to minimize "bad press" to protect his prison, and, according to Bounds, had a negative attitude towards him for making the report to the IA department. The jury could have concluded that his attitude and the leverage that he had over the DOC staff created an atmosphere that led others more directly involved to believe that their actions constituting First Amendment retaliation were condoned.

As to Appellant Warden Snyder, a reasonable jury could have found that his involvement in the "liquor store" incident was indicative of retaliatory action for Bounds' report to the IA department. That conclusion finds support in the facts that the allegations against Bounds were not substantiated and that Snyder pursued these allegations based on an anonymous tip.

We note that our willingness to uphold the jury's decision does not signify that we would necessarily have reached the same verdict, but only that there was an evidentiary basis for the jury to have reached the conclusion that it did.

Appellants argue that Bounds would have been removed from his correctional officer position regardless of his report to

the IA department. They contend that Bounds' alcoholism and depression, as evidenced through the psychological test performed by Dr. Hullinger, were so apparent that Bounds' allegations of retaliatory motive could not alter the conclusion that, under the circumstances, the DOC would have been compelled to legitimately reach the same decision even without regard to the protected First Amendment activity. *See Fultz v. Dunn,* 165 F.3d 215, 220 (3d Cir.1998). Appellants bear the burden of proof on this issue.

It is undisputed that Bounds had serious problems with alcoholism and depression toward the end of his time at the DOC, but Appellants were aware of these problems over the course of Bounds' employment. There is no record of any at-work problems until the hearing into the "liquor store" incident, where he broke down and cried. Appellants cannot show that Bounds' eventual reassignment would have happened anyway when they fail to offer evidence that the "liquor store" hearing, Bounds' evaluation by Dr. Hullinger, and Machtinger's insistence on Bounds' participation in the PACE program were not motivated in retaliation. The *Pickering* test is dependent on the facts, and Appellants had the burden to proffer some evidence as to the legitimacy of their actions. We are not prepared to disturb the jury's finding as to the issue of First Amendment retaliation.

## C. *Qualified Immunity*

In rejecting Appellants' claim of qualified immunity, the District Court looked to *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), for the appropriate analysis. *Saucier* clearly sets forth a two-part test. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a con-

stitutional right?" *Id.* at 200. If no violation can be established, the analysis ends. *Id.* If a violation exists, however, the next step would be to ask "whether the right was clearly established" in the context of the case. *Id.*

The right of public employees to be free from retaliation for speaking on matters of public concern was established in *Pickering* and *Mt. Healthy.* This protection was applied to correctional officers in *Gooden v. Neal,* 17 F.3d 925 (7th Cir.1994). If Appellants took the actions alleged, and did so to retaliate for Bounds' report, reasonable officers in Appellants' positions could not have believed that their conduct was lawful. It follows that the District Court did not err in rejecting qualified immunity as a defense.

## D. *The* Batson *Issue*

We next consider the District Court's action in seating juror Catherine Bell over Appellants' peremptory challenge. During the jury selection process Appellants challenged three of the four potential African-American jurors. They objected to Juror No. 18, who pursued a wrongful discharge claim against his former employer, and Juror No. 7, whose husband had likewise brought a wrongful discharge claim. The District Court allowed these challenges. They also objected to Juror No. 3, Catherine Bell, because they independently learned she had been convicted of theft in state court, and knew that she did not respond to the District Court's question during voir dire as to whether any panel member had been arrested. App. at 83–86.

In *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court set forth a three-prong test against the use of peremptory challenges against potential jurors for ra-

cially motivated reasons. *Id.* at 96. As the Court stated thereafter,

> [O]nce the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful racial discrimination.

*Purkett v. Elem,* 514 U.S. 765, 767, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). Appellants contend that their suspicion of Bell's conviction satisfied the racially-neutral explanation prong of the *Batson* test, and that the trial judge abused its discretion in failing to allow their peremptory challenge.

The District Court found that Bounds made out a prima facie case of racial discrimination and asked Appellants to proffer a racially neutral explanation. Appellants contend that their proffer was sufficient to satisfy the requirement of a non-discriminatory explanation in response to Bounds' *Batson* challenge. They pointed to the fact that Bell did not affirmatively answer the District Court's seventh and eighth voir dire questions: "Has any member of the panel or their immediate family been arrested, detained in a jail or prison or incarcerated in a correctional facility?" and "Has any member of the panel or family member been prosecuted by the Department of Justice?" App. at 82. They contend that because of their independent investigation of Bell, they believed that Bell should have answered those questions in the affirmative and that it was therefore reasonable to submit a racially-neutral challenge against her for not being forthright.

Under *Purkett,* the second prong of the *Batson* analysis "does not demand an explanation that is persuasive, or even plausible.... 'Unless a discriminatory intent is inherent in the ... explanation, the reason offered will be deemed race neutral.'" 514 U.S. at 768 (quoting *Hernandez v. New York,* 500 U.S. 352, 360, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). Appellants argue that, according to *Kirk v. Raymark Industries, Inc.,* 61 F.3d 147, 160 (3d Cir.1995), the denial or impairment of a peremptory strike requires per se reversal, without a need for a showing of prejudice by the party that lost its peremptory challenge.

■ The third prong of the *Purkett* analysis requires that the District Court made a determination as to whose proffer to believe. "It is not until the *third* step that the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Purkett,* 514 U.S. at 768. In *Purkett,* the Supreme Court accepted a non-prejudicial explanation for a peremptory challenge against a potential juror because he had long curly hair, facial hair, and a generally unkempt appearance. *Id.* at 769. There, as here, the explanation passed the second prong. However, in *Purkett* the Supreme Court found the proffer to be plausible because the explanation could easily be corroborated with the facts. There was no doubt that the potential juror in question there had long curly hair, facial hair, and a generally unkempt appearance. Here, Appellants could only make allegations about Bell's past criminal history, and her prior conviction could not be confirmed by the District Court. Under the circumstances, and given that the District Court is charged with the responsibility of making these decisions in context, we cannot con-

clude that its determination that Appellants' proffer was not plausible was an abuse of discretion.

### D. *The District Court's Handling of the* Fetzer *Criminal Verdict*

Correctional Officer Fetzer was one of the officers that Bounds named as having used excessive force during the riot suppression that was the root of the First Amendment retaliation claim. Officer Fetzer faced criminal charges in *United States v. Fetzer,* Cr. A. No. 99–41 (D.Del.), but was later acquitted. Appellants sought to use his acquittal in the criminal proceedings to rebut the testimony against Fetzer in the instant civil appeal.

We have held that evidence of an acquittal from a criminal proceeding is inadmissible in a civil proceeding unless used in "limited occasions when otherwise inadmissible testimony may be admitted as rebuttal." *Am. Home Assurance Co. v. Sunshine Supermarket, Inc.,* 753 F.2d 321, 325 (3d Cir.1985) (holding evidence of an acquittal in a criminal arson case inadmissible in a civil arson case). It has been explained elsewhere:

> The rationale for excluding such a dismissal or acquittal from evidence in a civil trial is obvious. While a conviction can be considered a judicial determination of guilt, a dismissal, acquittal, or failure to prosecute may simply reflect an inability to meet the requisite burden of proof. The danger that a jury will accept a non-conviction as determinative outweighs any probative value that such evidence may hold.

*Cunningham v. Wash. Gas Light Co.,* 1988 WL 90400, *1 (D.D.C.1988).

That reasoning is fully applicable here. The District Court's ruling was not an abuse of discretion.

### III.

### CONCLUSION

For the reasons set forth, we will affirm the District Court's order rejecting Appellants' motion for judgment as a matter of law or new trial.