**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CYNTHIA BOWLES and ANTONIO SOUSA, <br><br> Plaintiffs - Appellants, <br><br> v. <br><br> CITY OF PORTERVILLE; et al., <br><br> Defendants - Appellees. | No. 12-16467 <br><br> D.C. No. 1:10-cv-00937-LJO-GSA <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Eastern District of California
Lawrence J. O'Neill, District Judge, Presiding

Argued and Submitted February 14, 2014
San Francisco, California

Before: CALLAHAN and M. SMITH, Circuit Judges, and KORMAN, Senior District Judge.[**]

This case arises out of a tragic mistake. Joseph Bowles ("Bowles") was shot

and killed by California Highway Patrol Officer Chris McGuire ("McGuire")

---

[*]       This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]      The Honorable Edward R. Korman, Senior District Judge for the U.S. District Court for the Eastern District of New York, sitting by designation.

when, while being pursued on foot, Bowles pivoted and allegedly pointed a metallic object at McGuire. The officer fired a single shot that killed Bowles. Bowles' parents, Cynthia Bowles and Antonio Sousa ("Plaintiffs"), filed this action pursuant to 42 U.S.C. § 1983 alleging an unreasonable search and seizure, excessive force, and other claims. The district court granted summary judgment to Officer McGuire and the other defendants on the basis of qualified immunity, finding that McGuire's use of deadly force was objectively reasonable under the circumstances. Plaintiffs appeal. We affirm because the totality of the circumstances confirms that McGuire reasonably feared that Bowles was about to shoot him.[1]

We review "de novo a grant of summary judgment on the basis of qualified immunity," and in "determining whether summary judgment is appropriate, [view] the evidence in the light most favorable to the non-moving party." *Garcia v. Cnty. of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011); *see also Elder v. Holloway*, 510 U.S. 510, 516 (1994).

In *Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011) (en banc), we explained that qualified immunity shields an officer from liability even if his or her action

---

[1] Because the parties are familiar with the facts and procedural history, we do not restate them here except as necessary to explain our decision.

2

resulted from "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact," and that the "purpose of qualified immunity is to strike a balance between the competing need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* (internal quotation marks and citations omitted). *See also Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) ("[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law.") (internal quotation marks and citations omitted).

In determining whether an officer is entitled to qualified immunity, we consider: (1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "[T]he courts of appeals [are] permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. at 236. In *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011), the Supreme Court further defined when a right is clearly established.

> A Government official's conduct violates clearly established law
> when, at the time of the challenged conduct, "[t]he contours of [a]
> right [are] sufficiently clear" that every "reasonable official would
> have understood that what he is doing violates that right." *Anderson
> v. Creighton*, 483 U.S. 635, 640 (1987).

*See also Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (en banc).

The Supreme Court has noted that because "qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Pearson*, 555 U.S. at 231. As we recognized in *Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1994), there is some tension between an early determination of qualified immunity and the rule that summary judgment is improper where there are disputed issues of material fact. In *Scott*, we held that:

> The judge must carefully examine all the evidence in the record, such
> as medical reports, contemporaneous statements by the officer and the
> available physical evidence, as well as any expert testimony proffered
> by the plaintiff, to determine whether the officer's story is internally
> consistent and consistent with other known facts.

*Id*. at 915. We further noted "[a]ll determinations of unreasonable force 'must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Id*. at 914 (quoting *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)).

4

It is well established that an officer may not shoot a fleeing suspect unless he poses a serious threat to the officer. *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985). Thus, the pivotal issue is whether McGuire, or an officer in McGuire's position, would reasonably fear that Bowles was going to shoot him. Reviewing the totality of the circumstances, we agree with the district court that Bowles' fear was reasonable.

Plaintiffs do not question McGuire's subjective fear. Nor do they appear to question that Bowles stopped a second time and pivoted to face the officer. In addition, Plaintiffs do not deny that a cologne bottle found at the scene had a metallic and cylindrical top. Instead, they argue that a jury could conclude that Bowles did not have a cologne bottle in his hand. But the evidence shows that Bowles was responsible for the presence of the cologne bottle. When Bowles was running the officers had seen bulges in his pockets, and a search of Bowles after he was shot revealed at least one more cologne bottle. Plaintiffs' allegations that McGuire improperly moved the cologne bottle do not create a material issue of fact because they do refute that Bowles had been carrying the cologne bottles.

Similarly, Plaintiffs' argument that Bowles may have been crouching when he was shot does not raise a material issue of fact. It is pure speculation to suggest that Bowles was attempting to lie down as previously ordered by the officers.

5

Bowles had previously ignored the officers' commands and more importantly, there is no suggestion that crouching was inconsistent with preparing to fire a gun.

Furthermore, McGuire fired a single shot. This distinguishes the situation from instances in which the officers continued firing after avoiding the immediate threat. *See Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991); *Perrin v. Gentner*, 177 F. Supp. 2d 1115, 1120-21 (D. Nev. 2001).

Given Bowles' fleeing, the darkness, the officers' prior restraint, and the presence of a cologne bottle with a metallic cylindrical top, there is no other possible reason for McGuire's fear that Bowles was about to shoot him. While one might speculate as to other causes for McGuire's real but mistaken fear, Plaintiffs have not pointed to any evidence that might support such speculation.[2] McGuire was required to make a "split second judgment" in a situation that was "tense, uncertain, and rapidly evolving." *See Graham*, 490 U.S. at 397. His testimony is "internally consistent and consistent with other known facts." *See Scott*, 39 F.3d at 915. Accordingly, the district court properly concluded that McGuire's

---

[2] At oral argument, counsel asserted that the officers had not seen Bowles reach into his pocket. However, at his deposition McGuire stated that "based on the movement of his arms and elbows, it appeared that he was getting something either from his pocket or waistband."

apprehension was reasonable.  The district court's grant of summary judgment is

**AFFIRMED**.